The opinion of the Court was delivered by
Dunkin, Ch.
The first ground of appeal is an attempt to urge the principle of SimMns vs. 01oil, (2 Bail. 60,) to a case not within that rule of law, or the reason of it. It is true that Caleb Clark and James Oathcart, together with -two other persons, were sureties on the administration bond of Joseph J. McMullen, deceased. But at the time of the sheriff’s 'sale in January, 1846, J. J. McMullen had been dead but a few months — no account had been taken of his administration — no default ascertained — nor his inability to discharge his debts established. In this Court all these should appear before any actual indebtedness could be said to exist on the part of his sureties. Their liability to the estate of Hugh McMullen, deceased, was purely contingent, and afforded-no ground for the legal inference insisted on, that, in January, 1846, they were in possession of assets belonging to that estate. The distinction is adverted to in O’Neall vs. Herbert, McM. Eq. 499.
The second ground is answered by the facts detailed in the Chancellor’s decree. The sales of the slaves were made under the authority of other executions in the sheriff’s office as well as those' of Clark and of Oathcart. “ There were no attempts,” says he, “to depreciate their value, or to throw doubt or suspi *132 cion on the title. The price given was adequate.” This Court concurs in his conclusion that there was no ground to invalidate this sale.
The third ground of appeal is well taken. It is now conceded that the order for the sale of the slaves in the possession of James C. McMullen was premature, 'and may prove unnecessary. It is, therefore, rescinded.
The Chancellor decreed that, from the evidence before him, he saw no ground to impeach the sale of the lands in Lancaster district. Robert Cathcart was the purchaser of those lands at sheriff’s sales, and he was originally a defendant in the suit. He died before the hearing of the cause, to wit, in January, 1850, and though a bill of revivor had been filed against his infant heirs, they'had not had an opportunity to answer or defend the cause. The fourth ground is because the Chancellor erred in dismissing the bill as to the sale of the Lancaster lands, “ inasmuch as the complainants stated ’at the hearing of the cause, that they were not prepared, and would not go into that part of the case, and would not and did not offer any evidence or argument on that part of the case.”
It may not be amiss to repeat what is said in Bierdermann vs. Seymour, 17 Eng. Ch. R. 594, that “ it is the duty of the complainant to come fully prepared at the hearing to ask the Court for a decree, and if he is not so prepared, and the suit appears defective from his default, it is then a matter of discretion or indulgence to grant him leave to supply the defect.” So, if the cause is not ready for hearing in consequence of such casualty as here occurred, and the want of time to bring the new and necessary parties into Court, leave would be given to postpone the cause. But it would be replete with inconvenience to sanction a practice of hearing a cause piece-meal, or by detached parts. It is manifest, however, that the error in this case originated in a misapprehension on the part of the Solicitor, and, moreover, as the heirs of Robert Cathcart, deceased, were not, in fact, represented, they would not be bound by the decree. So much of the *133 decree, therefore, as dismisses the claim is opened, and the matter ordered to be set down for bearing ón the proper parties being represented.
Bush and Massey interposed a claim against the estate of Hugh McMullen, deceased, for moneys which they had paid on account of the Lancaster lands purchased by'them from Hugh McMullen, and which had been taken from them for defect of title in their vendor. The Chancellor ordered the claim to be investigated by the commissioner. It is noiy asked, and it is so decreed, that the commissioner have leave also to report, whether any of the payments, alleged to have been made by Bush and Massey, were received by Joseph J. McMullen as administrator of Hugh McMul-len deceased, and not heretofore charged - against him, and that he have leave to surcharge him accordingly.
The only remaining ground of appeal is that submitted on the part of James Cathcart. It appears that, at the death of Hugh McMullen, and for some time previously, Caleb Clark held an execution against him to a large amount. On the 2d January, 1842, Calfeb Clark having a note of $2000 falling due, or then due, in the Bank of Camden, applied to Joseph J. McMullen, who was then the administrator of his father’s estate. McMullen put his individual note in the Bank of Camden, with C. Clark and Robt. Cathcart as his sureties, which note was discounted, and the proceeds applied to the payment of Clark’s note in that institution. Clark gave to J. J. McMullen, as administrator of Hugh McMul-len his receipt for two thousand dollars on account of his execution. In the returns of J. J. McMullen to the ordinary he credited himself with this payment as made on account of the estate? and Mr. Clark exhibited it as a voucher at the reference. He also furnished» at the same time a statement of a settlement of his claims against Hugh McMullen, deceased, which he had made with J. J. McMullen, his administrator, on the 13th March, 1844; and in this statement Clark credited on his execution this payment of $2,000, as made 9th January, 1842. McMullen’s note -to the Camden Bank was several times renewed with the same *134 endorsers, and several payments thereon were made by him ; but, on the 2d April, 1845, the last renewal of $1,359.37 was protested for non-payment, and was taken np by Clark’s note for that amount. It was insisted, and so the commissioner hesitatingly determined, that Clark’s execution against Hugh McMullen should not be credited with the $2,000, but only with $640.63, the difference between that sum and $1,359.37 ; and the exception in this respect was overruled.
This is not like the case of Dogan vs. Ashbey, 1 Rich. 36, where a note agreed to be taken in payment on a judgment was held to be payment, although that would be sufficiently decisive of the case. There was no individual indebtedness on the part of J. J. McMullen to Caleb Clark. But the latter holding an execution against Hugh McMullen deceased, J. J. McMullen borrows money from a third person, pays it to Clark on account of his execution, takes his receipt to that effect, and enters it as a credit in his account as administrator, and, two year's afterwards, in an adjustment or settlement of the amount due on the execution, the credit is set down and admitted by Mr. Clark. It was no substitution, but an actual payment. Three years after the payment, McMullen fails to pay to the third person the money which he had borrowed and paid on Clark’s execution. In reference to the credit on the execution, is it of any importance that Clark was one of the persons who had become security for the loan which McMullen made in, 1842 in order to enable him to pay the execution ? If, in January, 1842, the amount due on Clark’s execution against Hugh McMullen deceased, had been $2,000, would not his receipt to the administrator for that sum have entitled the administrator, not only to credit in his account, but to have had satisfaction entered on the judgment ? In order to raise the money to pay the judgment, J. J. McMullen had not only incurred an individual liability which did not before exist, but he had involved another person besides Mr. Clark as his surety. It appears to the Court that the payment of the $2,000 on 9 th January, 1842, was an extinguishment of the execution of *135 Caleb Clark to that extent, and sbonld bave been so regarded in taking an account of the amount due.
It is ordered and decreed, that tbe decrees of the Circuit Court be modified as herein before expressed, and that, in all other respects, the same be affirmed.
JohNSton, Dargan and Wardlaw, CO., concurred,

Decree modified.